OPINION
{¶ 1} Jill L. Mastromatteo appeals from the trial court's entry of summary judgment in favor of appellee Brown Williamson Tobacco Corporation on her complaint alleging wrongful termination of her employment.
 {¶ 2} In her sole assignment of error, Mastromatteo contends the trial court erred in finding Brown Williamson entitled to summary judgment on the basis that she was an at-will employee who was fired legally. Mastromatteo insists that representations in an employee handbook created an implied contract that obligated Brown Williamson to follow a progressive discipline process before firing her.
 {¶ 3} The record reflects that Mastromatteo worked as a territory manager for Brown Williamson. Her responsibilities included making sales calls to retail stores. In February, 2001, the owner of a store on Mastromatteo's route called her supervisor, John McGurik, and complained that she had not serviced his store for several months. In response, McGurik examined Mastromatteo's service-call records, which reflected several visits to the store during this time period. The store owner denied that Mastromatteo had made the visits.
 {¶ 4} After speaking with the store owner, McGurik examined Mastromatteo's itinerary for February 15, 2001. He visited each store listed and was told that she had not made a sales call to any of the locations. The following day, he examined Brown 
Williamson's computer records and found that Mastromatteo had reported a visit to seven of the stores that she had scheduled on her itinerary for February 15, 2001. McGurik again visited the stores and was told that Mastromatteo had not made any of the service calls. Despite Mastromatteo's denial that she had falsified her service-call records, Brown Williamson terminated her employment.
 {¶ 5} On May 22, 2002, she filed a complaint against Brown 
Williamson, alleging that the company improperly had fired her without following progressive discipline procedures contained in an employee handbook. Brown Williamson moved for summary judgment, and a magistrate sustained the motion in a June 20, 2003, decision. The magistrate ruled that the employee handbook did not alter the at-will nature of Mastromatteo's employment and that Brown Williamson was not required to follow the progressive discipline system contained therein. The trial court later overruled Mastromatteo's objections to the magistrate's decision and adopted the decision as its own. This timely appeal followed.
 {¶ 6} On appeal, Mastromatteo asserts that language in the employee handbook created a contractual obligation on the part of Brown Williamson to engage in progressive discipline prior to terminating her. Having reviewed the record and applicable case law, we reject Mastromatteo's argument essentially for the reasons set forth by the magistrate and adopted by the trial court.
 {¶ 7} In support of her argument, Mastromatteo relies on the 1994 version of a "Revised Sales Policies Procedures Manual."[1] In the "Probation and Termination" section upon which Mastromatteo rests her claim, the manual states:
 {¶ 8} "Probation or termination may result from:
 {¶ 9} "1. Performance Reasons
 {¶ 10} "2. Conduct/Behavior Reasons
 {¶ 11} "Conduct and behavior standards are typically defined in policy manuals or handbooks. Performance is evaluated through the appraisal process whereby the specific standards of performance are defined in the appraisal document.
 {¶ 12} "In order to take disciplinary action, including termination, against an employee on the basis of their performance, you must be able to show that reasonable steps were taken to attempt correction of their particular inadequacy. This would include, but not be limited to:
 {¶ 13} Documented coaching session (employee acknowledgment and understanding of the issue).
 {¶ 14} Documented evaluation in which shortfalls in performance were pointed out to the employee, compared against specific performance requirements, told what was required and expected, and given sufficient time to improve.
 {¶ 15} Additional training or cross-training."
 {¶ 16} Mastromatteo insists that the foregoing language created a contractual obligation that bound Brown Williamson to engage in coaching, evaluation, and additional training or cross-training before firing her for falsifying her call records. This argument is devoid of merit for at least two reasons.
 {¶ 17} First, the manual cited by Mastromatteo did not create any contractual rights. In her application for employment with Brown Williamson, Mastromatteo acknowledged that employment with the company was "at-will" and that she could be terminated for any reason. In addition, we note that Mastromatteo also was subject to a 1994 Personnel Policies and Procedures Manual, which informed her: "Although the first 90 days of employment are considered probationary, an employee may voluntarily terminate his employment with Brown Williamson and may be terminated by the company at any time for any reason. Any oral or written statements or promises to the contrary are hereby expressly disavowed and should not be relied upon by any prospective or existing employee."
 {¶ 18} In light of the at-will language in Mastromatteo's employment application and the foregoing disclaimer, the trial court correctly found no inference of contractual obligations between the parties. See, e.g., Shepard v. Griffin Services,Inc., Montgomery App. No. 19032, 2002-Ohio-2283 and Opal Napierv. Centerville City Schools (June 10, 2004), Montgomery App. No. CA 20185. Rather than creating contractual rights and obligations, the progressive discipline language cited by Mastromatteo merely constituted a unilateral statement of rules that did not alter the at-will nature of her employment. Id.
 {¶ 19} Second, the disciplinary language cited by Mastromatteo simply has no applicability in this case. The manual draws a clear distinction between discipline for performance reasons and conduct/behavior reasons. It adds that performance is evaluated through periodic appraisals. The manual then states that "[i]n order to take disciplinary action, including termination, against an employee on the basis of theirperformance, you must be able to show that reasonable steps were taken to attempt correction of their particular inadequacy." (Emphasis added). Such steps include coaching sessions with employee "acknowledgment and understanding of the issue," documented evaluation in which employees are counseled about what is expected of them, and additional training or cross-training.
 {¶ 20} It borders on frivolous to argue that the foregoing requirements apply when an employee is fired for falsifying call reports, which is tantamount to theft. Although Mastromatteo complains that she was not afforded an opportunity to receive coaching, a documented evaluation, or additional training, it is absurd to suggest that the company was required to conduct a coaching or training session to explain to an adult that falsification of sales-call records is unacceptable behavior. Likewise, falsification of records is not a "shortfall in performance" that needs to be "pointed out to the employee" so that improvements can be made. In short, no reasonable trier of fact could conclude that Mastromatteo was fired for a "performance" reason as opposed to a "conduct/behavior" reason. Therefore, the handbook language concerning coaching sessions, documented evaluations, and additional training had no applicability to her. Accordingly, we overrule her assignment of error and affirm the judgment of the Montgomery County Common Pleas Court.
Judgment affirmed.
Grady, J., and Young, J., concur.
[1] Although Brown Williamson has updated its various manuals since 1994, Mastromatteo avers that she has "no recollection" of receiving an updated version of the Revised Sales Policies and Procedures Manual. For present purposes, we will assume, arguendo, that Mastromatteo never received an updated version and that, as she contends, the 1994 Revised Sales Policies and Procedures Manual applies.